UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| B GREEN GROUP, LLC,<br><br>                      Plaintiff,<br><br>   -against-<br><br>JORDAN PSIGODA,<br><br>                      Defendant. | Case No. 18-cv-9467<br><br>**COMPLAINT** |

Plaintiff B Green Group, LLC, by and through its undersigned attorneys, alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter over this action pursuant to 28 U.S.C. §§ 1332 (diversity). The Plaintiff and the Defendant are citizens of different states, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

2. This Court has personal jurisdiction over the Defendant because, as set forth herein, the Defendant transacted business and entered into the agreements at issue within the Borough of Manhattan, New York City (in the State of New York), the claims herein arise from that business activity, and the Defendants' activities and transactions in New York have a substantial relationship to the claims asserted herein. The Defendants' conduct giving rise to the claims herein took place in, were directed to, and had an effect in New York State.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## NATURE OF THE ACTION

4. Plaintiff brings this action to recover monies owing to Plaintiff by Defendant Jordon Psigoda ("Psigoda"), totaling $100,000, plus statutory interest.

## PARTIES

5. Plaintiff B Green Group, LLC ("B Green Group") is a Florida limited liability company that is duly registered and authorized to do business in the State of New York.

6. Defendant Jordan Psigoda is resident of the State of California.

## FACTUAL BACKGROUND

7. As set forth below, during 2014, Defendant Jordan Psigoda visited New York on multiple occasions to meet with representatives of the Plaintiff to (a) test sample e-cigarettes that the Plaintiff had access to; (b) specify changes to the sample e-cigarettes; and (c) enter into an agreement between Defendant and Plaintiff, whereby Defendant agreed to purchase, and placed an order for, 50,000 e-cigarettes.

8. Andre Bernard and Paula Bernard are the members of Plaintiff B Green Group, LLC. At all relevant times, Andre Bernard and Paula Bernard owned an apartment in New York City.

9. Andre Bernard originally met Defendant Jordan Psigoda in February 2014 at a business convention. After that meeting, Mr. Psigoda stayed in touch with Mr. Bernard by repeatedly calling Mr. Bernard in New York, including to discuss business opportunities.

10. In March of 2014, Mr. Psigoda called Mr. Bernard, who was at his New York residence, to discuss his business needs. During their discussion, Mr. Bernard mentioned that he owned a company, B Green Group, and that this company had the capability and contacts to obtain e-cigarettes in large quantities. Mr. Psigoda expressed interest in purchasing e-cigarettes

from B Green Group, and informed Mr. Bernard that he would like to travel to New York City to sample the e-cigarettes that B Green Group could supply.

11. On or about March 11, 2014, Mr. Psigoda traveled to New York City and met Andre Bernard in Manhattan, who at all relevant times was acting as an agent of B Green Group. Mr. Psigoda first went to Mr. Bernard's apartment, which was on the East side of Manhattan, New York City. Mr. Psigoda and Mr. Bernard then walked from Mr. Bernard's apartment to a nearby restaurant (Tony's) to discuss the e-cigarette samples. Mr. Bernard had with him approximately two dozen samples of e-cigarettes, each having slightly different features.

12. During that meal, Mr. Psigoda requested that certain changes be made to the design of the e-cigarette both for functionality and appearance. Mr. Psigoda ended the March 11, 2014 meeting and agreed to return to New York to examine the revised samples of the e-cigarettes when they arrived.

13. B Green Group invested time and money to have engineers fly abroad to implement Mr. Psigoda's requested revisions.

14. After Mr. Bernard informed Mr. Psigoda that the revised samples had arrived in New York City on August 6, 2014, Mr. Psigoda traveled again to New York in September 2014, and again met with Mr. Bernard at his New York City apartment. Mr. Psigoda examined the modified samples of the e-cigarettes.

15. During this meeting in New York City, Mr. Bernard introduced Mr. Psigoda to an engineer, Gordon Wong, who Mr. Bernard compensated to help make the requested revisions to the e-cigarettes. Gordon Wong lives in New York City and performed the work necessary to make Mr. Psigoda's requested revisions in New York City.

16.     During that meeting in Manhattan, Mr. Psigoda requested further revisions to the e-cigarettes.  For example, Mr. Psigoda requested that instead of the tip of the e-cigarette being made out of wood, he preferred that it be made with a rubber tip (a feature that some of the other samples possessed).

17.     Based on this request, B Green Group again invested time and money in New York to cause the additional revisions to be made to the e-cigarette samples.  Mr. Psigoda requested that 100 samples be produced, and at B Green Group's expense, 100 samples were created, and shipped to New York City at Mr. Psigoda's request.

18.     On or about October 5, 2014, Mr. Psigoda traveled for a third time to New York to examine the revised samples of e-cigarettes and to test them.  Mr. Psigoda again met Mr. Bernard at Mr. Bernard's New York City apartment and approved of the functionality of the e-cigarettes.  However, Mr. Psigoda specified a color for the e-cigarette (he wanted a certain to be black, and a certain percentage to be white), and he also specified a color of the "on" light button for the e-cigarettes.

19.     During that October 2014 meeting Mr. Psigoda made an offer to Mr. Bernard, which was accepted, and thus a contract was formed.  Specifically, Mr. Psigoda informed Mr. Bernard that he was making an offer to place an order for 50,000 e-cigarettes (units), and offered to pay B Green Group $2 per e-cigarette.  Under this proposal, B Green Group would order 50,000 e-cigarettes from its source, the e-cigarettes would arrive in New York, and then B Green Group would ship the e-cigarettes to an agreed-to facility in Colorado, where Mr. Psigoda would pick them up.  Mr. Psigoda also proposed that he would timely pay within 30 days for such e-cigarettes upon Mr. Bernard's order of such e-cigarettes.  In response, at that meeting in New

York City, Mr. Bernard accepted this offer on behalf of B Green Group, and thus a full and binding contract was formed.

20. Within a few days, B Green Group ordered from its source the 50,000 e-cigarettes that Mr. Psigoda had ordered.

21. On or about December 2, 2014, Plaintiff sent Mr. Psigoda a purchase order and bill for the 50,000 e-cigarettes, which bill totaled $100,000.  Within a few weeks of December 2, 2014, Mr. Psigoda called Mr. Bernard and stated that his friends and colleagues who had tried the samples were extremely satisfied, and thus expressed great enthusiasm about the e-cigarettes.

22. On or about February 2015, B Green Group received the 50,000 e-cigarettes that Mr. Psigoda had ordered.  B Green Group caused the 50,000 e-cigarettes to be shipped from New York to the agreed-upon location in Colorado for Mr. Psigoda to pick them up.

23. Mr. Bernard informed Mr. Psigoda to pick up the e-cigarettes.  On or about March and April 2015, Mr. Psigoda made three trips and picked up a total of 40,000 of the 50,000 e-cigarettes.

24. In addition to having billed Mr. Psigoda for the full $100,000 owing for all 50,000 e-cigarettes, B Green Group also sent Mr. Psigoda reminder invoices, including for the amount $80,000 past due for the 40,000 e-cigarettes that Mr. Psigoda had picked up.  In addition, on behalf of B Green Group, Mr. Bernard repeatedly called Mr. Psigoda and asked that he make the payments past due. Despite these repeated demands, Mr. Psigoda has failed to pay B Green Group anything for the e-cigarettes – not even the $80,000 that is due and owing for the e-cigarettes that he picked up.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

25.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

26.    On or about October 5, 2014, a contract was entered into between Defendant Jordan Psigoda and Plaintiff B Green Group.  Specifically, on or about October 5, 2014 Jordan Psigoda ordered 50,000 e-cigarettes from B Green Group, and agreed to pay $2 per unit for such e-cigarettes within 30 days of the order.  The Plaintiff fully performed the contract, and shipped the 50,000 e-cigarettes to Colorado at the agreed location for pickup by Mr. Psigoda.

27.    On or about December 2, 2014, Plaintiff sent Mr. Psigoda a purchase order and bill for the 50,000 e-cigarettes in the amount of $100,000.  However, Mr. Psigoda failed to pay the $100,000 owing, thereby materially breaching the contract he had entered into with Plaintiff.

28.    During the months of March and April 2014, Mr. Psigoda picked up 40,000 of the 50,000 cigarettes which Plaintiff had delivered to the agreed-upon location in Colorado.  However, despite receiving invoices for the $80,000 past due for the 40,000 e-cigarettes that Mr. Psigoda took, Mr. Psigoda materially breached the contract by failing to make payment.  Indeed, Mr. Psigoda has failed to pay any money for such e-cigarettes.

29.    As a direct and proximate result of Mr. Psigoda's material breach, Plaintiff B Green Group has been damaged in the amount of $100,000, plus statutory interest.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Unjust Enrichment)

30.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

31.    In the alternative to the breach of contract claim (Count 1), Plaintiff asserts a claim for unjust enrichment.  Defendant Psigoda picked up 40,000 of the 50,000 e-cigarettes that he ordered from Plaintiff, for which he promised to pay $2 for each e-cigarette.  Defendant

Psigoda was enriched by receiving 40,000 e-cigarettes that had commercial value of no less than $2 per unit. Defendant Psigoda was enriched at the expense of Plaintiff, which paid its provider in full for the 50,000 e-cigarettes that Defendant had ordered, and which put time and effort into making revisions to the e-cigarettes and following through with its performance. It is against equity and good conscience to permit to Mr. Psigoda to retain the value of the e-cigarettes without compensating the Plaintiff for the 40,000 e-cigarettes.

32. The market value for the 40,000 e-cigarettes is worth at least the $2 per unit price that the parties had agreed on. Indeed, the market value is significantly higher, as Mr. Psigoda obviously ordered the e-cigarettes for $2 each knowing that he could in turn sell them for profit in the market.

33. Accordingly, in order to prevent unjust enrichment of Mr. Psigoda, Mr. Psigoda should pay to the Plaintiff no less than $80,000 plus statutory interest.

WHEREFORE, Plaintiff demands damages and judgment in its his favor and against Defendant in the following respects:

(1) On the First Cause of Action, damages in an amount of $100,000 plus statutory interest;

(2) On the Second Cause of Action (in the alternative to the First Cause of Action), $80,000, plus statutory interest; and

(3) All other relief and damages as the Court and/or jury deem appropriate.

Dated: October 16, 2018

                                                      CATAFAGO FINI LLP

                                  By: /s/ Tom M. Fini
                                           Tom M. Fini, Esq.
                                           The Empire State Building
                                           350 Fifth Avenue, Suite 7710
                                           New York, NY 10118
                                           212-239-9669
                                           tom@catafagofini.com